A

# TRUST AGREEMENT

THIS AMENDED AND RESTATED AGREEMENT AND DECLARATION OF TRUST, effective June 1st, 2005, made by and between CHESTER STEWART JOSEPH JONES AND HENRY A. KYLE III (who, with their successors, designated in the manner herein provided, are called "Union Trustees"), and RONALD F. CRONIN, ERIC J. JANSSEN AND LEONARD LEPORE (who, with their successors, designated in the manner herein provided are called "Employer Trustees"), hereinafter collectively called "Trustees."

WHEREAS, the SHEET METAL CONTRACTORS ASSOCIATION OF RHODE ISLAND, herein included within the definition of "Employer" and sometimes called "Association," and LOCAL 17 of SHEET METAL WORKERS INTERNATIONAL ASSOCIATION – RHODE ISLAND, herein included within the definition of "Union," have entered into collective bargaining agreements which obligate the Employer to make payments to a Program for employees represented by the Union; and

WHEREAS, in order to carry out such obligations and to effectuate such Program, the parties have determined to establish a trust fund to receive employer contributions and by which there may be provided for employees covered by such collective bargaining agreements, benefits covering death, disability, accident, sickness, medical expense, hospitalization, or similar benefits, as the Trustees may determine; and

WHEREAS, the parties thereto have been duly authorized and have the power to enter into this Trust Agreement;

NOW THEREFORE, the parties agree as follows:

## ARTICLE I

## DEFINITIONS

The following definitions shall govern the following terms when used in this Trust Agreement unless otherwise required by the context:

1.1 "Collective Bargaining Agreement" - - A contract between an employer and a union and any supplement, amendment or continuation thereof which requires the Employer to make payments for a health and welfare program for its employees.

1.2 "Employer"- - An employer who is obligated under a collective bargaining agreement with a union, whether executed by itself or by an association of employers of which it is a member on its behalf, to make payment for a health and welfare program for employees covered by the collective bargaining agreement and which, in conjunction with the Union, subscribes to this Agreement or any document whereby it accepts the terms of this Agreement.

1.3 "Union"- - A labor organization which is a local union or district council of the Sheet Metal Workers International Association and which has a collective bargaining agreement with an employer which requires payment by the employer for a health and welfare program for employees covered by the collective bargaining agreement and which, in conjunction with the Employer, subscribes to this Agreement or to any document which incorporates this Agreement by reference.

1.4 "Employee"- - An employee in a bargaining unit represented by a Union in the employ of an Employer.

1.5 "Contributions"- - Payments to the Fund required of an employer by a collective bargaining agreement.

1.6 "Trustees"- - The trustees of this Trust and their successors.

1.7 "Insurer"- - Any insurance company which insures any of the beneficiaries of the trust through a group insurance policy issued to the Trustees.

1.8 "Policy"- - The policy or policies of group insurance secured and held by the Trustees for the purpose of this Trust.

1.9 "Trust"- - The trust established by this Agreement.

1.10 "Trust Fund"- - All property, monies and contract rights held by the Trustees pursuant to this Agreement.

1.11 "Eligible Persons "- - All persons whom the Trustees, under the powers conferred upon them by this Agreement, make eligible for the benefits provided hereunder.

## ARTICLE II

## CREATION OF TRUST

2.1 ESTABLISHMENT AND IDENTIFICATION

There is hereby established a Trust, which shall be known as the Sheet Metal Workers Local Union No. 17 Insurance Fund of Rhode Island, and the Trustees may hold property, exercise the powers set forth herein and those necessary to accomplish and enter into contracts, and in all matters act in behalf of the Trust in that name. This Trust shall be used for the purposes herein set forth. There shall be an equal number of

Trustees appointed by Employers and appointed by Unions at all times. This Trust Agreement amends in its entirety the Trust Agreement of the parties dated January 1, 1976 which was originally effective January 6, 1954.

2.2 PURPOSE

This Trust is established for the purpose of providing a health and welfare plan for the benefit of persons who may from time to time be beneficiaries hereunder.

ARTICLE III

THE TRUSTEES

3.1 NUMBER OF TRUSTEES

There shall be not more than six (6) Trustees of this Trust. Of this number one-half shall be appointed by the Association and one-half shall be elected by the Rhode Island members of the Union named on page one of this Agreement.

3.2 APPOINTMENT OF SUCCESSOR TRUSTEES

(a) Each Trustee has hitherto been appointed for a term of three (3) years, with the term of one Union Trustee and one Employer Trustee expiring on June 30 of each year. Subject to the provisions of this Article for removal, resignation, death or incapacity, the system of staggered appointments for three years shall continue and one Employer Trustee and one Union Trustee shall be appointed on July 1 of each year to succeed each of such Trustees whose term as a Trustee expired on June 30 of the same year. A Trustee appointed to replace another during his term shall serve only to the expiration of that term unless reappointed. At least two of the Union Trustees must be Eligible Persons with respect to the Trust.

(b) The Trustees shall serve until their death, incapacity, resignation or removal.

3.3 REMOVAL OF TRUSTEES

An Employer Trustee may be removed by the Association. The removal shall be effective when the Trustees receive written notice signed by an officer of the Association or at such later date as may be specified in the notice. Notice to the Trustees shall be considered given when the notice is delivered to each Trustee or to the office of the Fund Administrator.

3.4 RESIGNATION OF TRUSTEES

A Trustee may resign and be discharged from further duties or liabilities under this Trust by giving at least thirty (30) days' written notice to the party having the power to appoint his successor and at the same time giving a copy of such notice to each Trustee, or, in lieu thereof, to the office of the Fund Administrator. The party and the resigning Trustee may agree to a shorter period of time.

3.5 APPOINTMENT OF SUCCESSOR TRUSTEES

Whenever a vacancy occurs in the office of a Trustee, it shall be filled by a successor Trustee appointed by the Association or Union which appointed the Trustee whose removal, death, disability or resignation caused the vacancy. Written notice of such appointment shall be given by the Association or Union, as the case may be, to the Trustees, and the appointment shall be effective as of the date set forth in the notice, provided it shall not become effective until the appointee tenders an acceptance in writing to the Trustees by delivery thereof to the office of the Fund Administrator. The Association or Union responsible for appointing a trustee to fill a vacancy shall do so

within fifteen (15) days after the vacancy occurs. Notice to the Trustees shall be considered given when the notice is delivered to each Trustee or to the office of the Fund Administrator.

3.6 TRUSTEES' TITLE

In case of death, resignation, refusal or inability to act of any one or more of the Trustees, the remaining Trustees shall have all the powers, rights, estates and interests of this Trust, and shall be charged with its duties, provided that, in such cases, no action may be taken unless it is concurred in by at least two Employer Trustees and two Union Trustees.

3.7 TRUSTEE OFFICERS

The Trustees shall elect from among themselves in July of each year, a chairman and co-chairman to serve for a term of one year, commencing July 1. One such officer shall be an Employer Trustee and one shall be a Union Trustee. The Trustees may also choose such other officers as they deem desirable and the Trustees shall determine what responsibilities each officer shall have.

3.8 MEETINGS

All decisions and acts of the Trustees taken at a meeting shall be determined by the concurring vote of at least two Trustees appointed by the Association and two Trustees appointed by the Union. A Trustee may dissent from any vote and have it recorded in the minutes of the meeting.

3.9 ACTION WITHOUT A MEETING

Action may also be taken and a decision made by the Trustees without a meeting provided such action or decision is evidenced by a written instrument signed by all of the Trustees.

3.10 EXECUTION OF DOCUMENTS

A certificate signed by the Trustees shall be evidence of the action of the Trustees. Whenever the signature of the Trustees is required on any such certificate or on any other instrument, only the signature of one Employer Trustee and one Union Trustee shall be required; and as to any persons doing business with the Trustees, any such certificate or other instrument so signed shall conclusively be presumed to be authentic, and all facts and matters stated therein shall conclusively be presumed to be true, and such persons may rely on such certificate or other instrument for all purposes.

3.11 FAILURE OF TRUSTEES TO AGREE

Whenever the Employer and Union Trustees are deadlocked on any matter submitted for their concurrence with respect to administration of the Trust, the Trustees shall appoint an impartial umpire to decide such dispute. If the Trustees fail to agree upon an impartial umpire within ten (10) days after the issue upon which the Trustees are deadlocked was first voted upon, the majority of either the Employer or the Union Trustees may petition the United States District Court for the district where the Trust has its principal office for appointment of an impartial umpire to decide such dispute. The decision of any impartial umpire appointed by either the Trustees or the court shall be conclusive and binding on all of the Trustees; provided, however, the arbitrator shall have no authority to alter, amend or change any of the terms or conditions of the Trust or any plan of benefits adopted by the Trustees including insurance contracts by which benefits are provided.

3.12 OFFICE OF THE TRUST

The Trustees shall maintain a principal trust office in the State of Rhode Island, for the purpose of administering this Trust, maintaining all records considered necessary

or desirable by the Trustees and receiving all communications and notices to the Trustees. The person in charge of the office of the Trust shall be responsible for notifying each Trustee of all pertinent notices which this instrument requires to be given to each of the Trustees.

3.13 APPOINTMENT OF ADMINISTRATOR

The Trustees may delegate to an administrator, one or more of the Trustees or to any other competent person or persons such of their duties as a reasonable, prudent businessman would delegate to an agent, including but not limited to, the billing of Employers, collection of contributions, keeping of the Trustees' records, the payment of insurance premiums, investment of monies and the writing of checks for purposes expressly specified in a written delegation of authority and as permitted by the Employee Retirement Income Security Act of 1974 (ERISA), as it may be amended. The Trustees shall notify the insurer and any bank in which Trust funds are on deposit of the authority of such person or persons and of any change in such authority. Copies or such written authority shall be delivered to the insurer and such bank.

3.14 BONDS AND INSURANCE

The Trustees shall procure such fidelity or faithful performance bonds in such amounts and covering such persons as may be required by any applicable laws. They may, in their discretion, obtain additional such bonds, or bond in additional amounts, as they deem necessary for the protection of the Trust. The cost of such bonds shall be paid from the Trust Fund. The Trust may at its expense purchase fidelity insurance covering losses incurred by action or inaction of the Trustees or any other fiduciary.

3.15 COMPENSATION AND EXPENSES

The Trustees may receive reasonable compensation for their services; provided, however, those Trustees who because of their employment are ineligible for compensation under ERISA shall not receive the same. The Trust Fund shall be charged with all reasonable expenses incident to this Trust incurred by the Trustees or any of them, including charges and compensation of all such agents, actuaries, auditors, accountants, insurance advisors, investment advisors, and attorneys, as in the judgment of the Trustees shall at any time be needed for the purposes of this Trust. The Trust may advance to a Trustee a reasonable sum to cover expenses of a Trustee to be incurred in the immediate future in the performance of his duties.

ARTICLE IV

POWERS AND DUTIES OF TRUSTEES

4.1 ESTABLISHMENT OF HEALTH AND WELFARE PROGRAM

The Trustees may apply for a group insurance policy or policies from an insurer or insurers licensed to do business in all of the states where the Employees of Employers are employed or the offices of the Unions are located. Such policy or policies may provide eligible persons with coverage on account of death, disability, accident, sickness, medical expense, hospitalization or any or all of such coverages and such others as the Trustees may determine as authorized herein. The Trustees shall have the discretion to determine which, if not at all, of the foregoing listed benefits shall be provided, and those in addition thereto and the character and amount of each such benefit as in their opinion the Trust Fund is financially able to maintain. The Trustees may, in their discretion, provide any or all such benefits directly from the Trust Fund without obtaining policies of

insurance for the same, or provide for cash payments in lieu of health benefits when an Employee would have coverage under more than one health plan The Trustees shall not provide or secure pensions or annuities for retirement purposes.

4.2 DETERMINATION OF ELIGIBILITY

The Trustees shall have full authority to determine the requirements with which an individual must comply in order to be eligible for benefits and determine all of the terms and conditions of eligibility of Eligible Persons for the purpose of this Trust; and also, under such circumstances and conditions as they may determine -- they may make benefits available for or on account of the following:

a. Full-time employees of the Union(s) who may also be officers.

b. Employees of the Trust if their duties are principally connected with the Trusteeship.

c. Persons who have retired from active employment as an employee of an Employer or from one of the foregoing listed categories.

d. Dependents and family members of Employees and other persons set forth in a. through d. of this section.

Provided, however, in no event, except as to dependents of Employees, may they make the foregoing benefits available under conditions which would decrease benefits otherwise available to Employees. Benefits that may be provided to retired former Employees as a class shall not be suspended, modified or revoked unless by the unanimous vote of the Trustees after the Trust's reserves are less than the amount needed to provide three (3) months coverage to all Eligible Employees and further provided that such benefits shall be automatically reinstated if thereafter the reserves exceed the

amount needed to pay three (3) months coverage for Eligible Employee for a period of four (4) consecutive months.

The Trustees also may provide reasonable extensions of coverage for any persons who have been eligible for benefits even though during such extensions such persons may not otherwise be eligible for benefits under this Trust because they have ceased to be Employees or ceased to be in any of the foregoing categories. The term "reasonable" shall mean an extension which the insurer providing such coverage is customarily willing to extend or if there is no insurer of such coverage, that extension insurers customarily give under similar circumstances.

To the extent and under such conditions as they adopt which do not conflict with the appropriate Collective Bargaining Agreement, the Trustees may increase a benefit or make an additional benefit available as an option to Employees who contribute the amount determined by the Trustees is required to provide the increased or added benefit. No increased or added benefit under this paragraph shall be granted to any Employee for any period for which the voluntary contributions are not received by the Trustees.

4.3 MAINTENANCE OF GROUP INSURANCE POLICIES

The Trustees, from Trust Funds available, shall pay the premiums on group insurance policies obtained by them. The Trustees shall be the policyholder on all such policies. The Trustees shall have the power to terminate and change group insurance policies as in their discretion they may determine for the purposes of this Trust.

The Trustees may enter into any agreement with an insurer which they, in their absolute discretion, deem to be in the best interests of this Trust, including, but not limited to, the following:

a. Agreements whereby the experience under any policy or policies issued to the Trustees may be pooled with the experience of other policyholders of the insurer.

b. Agreements whereby the Trustees may deposit certain sums with an insurer, which sums may be used by the insurer as premium under the policy or policies issued to the Trustees or may be used for payment of claims or for other purposes connected with such policy or policies.

c. Agreement in respect of the calculation and payment, or other disposition of any experience rating refunds, dividends or other credits to be paid to the Trust by an insurer. In the absence of any such agreement, any experience rating refunds, dividends or other credits paid to this Trust shall be used for the general purposes of this Trust as the Trustees, in their discretion, shall determine.

4.4 AGREEMENTS WITH OTHER TRUSTEES

The Trustees may enter into such agreements, as they may deem desirable, with the trustees of any other multi-employer tax-exempt health and welfare trust or trusts which comply with provisions of 29 USC Section 186(c) (5) and which provide for any or all of the following:

a. Joint administration of such Trusts.

b. Pooling of premiums, costs, claims and other factors pertaining to the insurance experience of the trusts for purposes or equalizing costs or for any other purpose deemed desirable by the Trustees.

c. Guarantees of premium liabilities of each of the trusts or deposit of money or other security providing such guarantees.

d. Arrangements for eligibility credits on a reciprocal basis for the benefit of persons who may transfer into or out of the group for the benefit of which this Trust exists.

e. Such other matters, as may in the discretion of the Trustees, be in the best interests of this Trust, or a more efficient administration thereof.

f. Agreements to merge this Trust into any other trust or to accept the merger of another trust into this Trust provided such other trust has the same basic purposes as this Trust and provided further the Union and the Employer designated on page one of the Agreement to this Trust each accepts in writing the conditions of such merger.

4.5 RECEIPT OF EMPLOYERS' CONTRIBUTIONS

The Trustees shall establish a uniform system for the timely transmission of reports and contributions from Employers. Reports from the Employers shall be due on the tenth (10th) day after the end of each calendar month and contributions shall be due on the twentieth (20th) day after the end of each calendar month, except as otherwise set forth in the collective bargaining agreement. The Trustees shall notify any Employer immediately of a delinquency or a mistake or discrepancy in a report or contribution. Where an Employer fails to make timely payment of contributions or refuses to make a correct report, the Trustees may terminate the Employer from further participation in this Trust by sending a notice of termination to the Employer's address as it appears in the records of the Trust. Such notice shall state the cause for termination and shall state the date on which insurance and/or benefits for the Employer's Employees or other Eligible Persons terminates; provided, however, in no event shall insurance or other benefits

terminate prior to the last date for which eligibility for such insurance coverage or other benefits existed by reason of contributions paid to the Fund.

Trustees may, in their absolute discretion, pay out of trust funds premiums on insurance or if benefits are paid directly, such benefits for an Employer's Employees where the Employer fails to pay contributions which are due or file a proper report for a period that does not exceed three months from the date the first delinquent contribution or report was to be paid or filed, as the case may be, provided the participation of the Employer has been terminated for failure to comply with the foregoing.

An Employer shall remain liable for the full amount of contributions due during the period for which such premiums were so paid for his Employees. The Trustee shall have the power to take any action necessary for the recovery of such contributions. However, nothing contained herein shall be deemed to modify or limit in any way any rights the Union(s) may have under the terms of a collective bargaining agreement to enforce collection of any amounts due the Trust.

4.6 LIQUIDATED DAMAGES

The parties recognize and acknowledge that the regular and prompt transmission of reports and the payment of Employer contributions to the Trust is essential to the continued efficient administration of the Trust, and that it would be extremely difficult, if not impracticable, to fix the actual expense and damage to the Trust which would result from the failure of an individual Employer to file monthly reports and to pay such monthly contributions in full within the period established by the Trustees.

Therefore, the amount of damage to the Trust resulting from the failure to file a monthly report shall be presumed to be One Hundred Dollars ($100) and the amount of

damage to the Trust resulting from the failure to remit contributions when due shall be presumed to be the sum of twenty dollars ($20) or one percent (1%) of the amount of the contribution or contributions due, whichever is greater, for the first month in which the Employer is delinquent. The amount of damage resulting from such failure shall be presumed to be the additional sum per month of twenty dollars ($20) or one percent (1%) of the amount or contribution or contributions due, whichever is greater, for each subsequent month he continues to be delinquent.

Such amounts shall apply to each separate month for which an Employer is delinquent and shall continue to be added monthly to such delinquency until it is paid in full. These amounts shall become due and payable as liquidated damages, and not as a penalty, upon the day immediately following the completion of the period allowed by the collective bargaining agreement with the Employer, or if none, by the rules and regulations of the Trustees, for payment of Employer contributions, and shall become due and payable monthly thereafter during continuance of the delinquency. Such amounts of liquidated damages shall be payable in addition to -the delinquent contribution or contributions.

If the Trustees bring suit against any Employer to collect any delinquent contributions or liquidated damages, the Employer also shall be liable for costs of filing suit and reasonable attorney's fees.

4.7 RECORDS AND ANNUAL AUDIT

The Trustees shall maintain complete records of all transactions of the Trust, including complete and up-to-date lists furnished by the Employers of Eligible Persons for whom contributions have been made. The Trustees shall provide for an audit to be

made annually or semiannually, as they shall determine, by a Certified Public Accountant, the cost of which shall be borne by the Trust. This Agreement, the description of benefits (Plan), copies of all reports required by law to be filed with an agency of the United States, the most recent Certified Audit report and any documents required by law to be made available for inspection of "interested persons" shall be maintained at the Fund Office available for inspection under reasonable conditions during normal business hours. Any "interested person" who is entitled to copies of any such documents at his request shall be required to pay to the Fund the reasonable estimated cost of copying the same at the time such request is made unless he or she is entitled to the same without charge by law. For the purposes of this section only, "interested persons" are those persons who by law or by the terms of this Agreement are entitled upon request to inspect any records of the Fund.

4.8 DEPOSITS AND RESERVES

The Trustees may accumulate in the reserves of the Fund contributions from Employers newly admitted to this Trust for such number of months as the Trustees may determine on a nondiscriminatory basis, before providing any benefits on account of such Employer's Eligible Persons.

4.9 REPORTS

The Trust shall make such reports and file such information with appropriate public authorities as may be required by applicable laws to maintain the Trust as a tax-exempt trust under the Internal Revenue Code of 1954, as amended or any successor law or code to the end that Employer contributions will be an ordinary business expense deductible from income.

4.10 AUDIT OF EMPLOYER RECORDS

The Trustees shall have the right themselves or through any authorized representative, to audit such books and records of any Employer as may be necessary to determine if all liabilities of such Employer to the Trustees have been paid, and to determine that the correct contributions have been received for all persons for whom the Employer is required to make contributions. The Trustees may authorize an insurer or its authorized representatives to make such audit. Each Employer who becomes a party hereto or consents to be bound by the terms hereof agrees to make such books and records available at all reasonable times so that such audits may be conducted. If any Employer fails to allow such audit, the Trustees may terminate insurance benefits for the Employees of such Employer and all other Eligible Persons for whom such Employer is responsible to pay contributions. However, the Trustees shall continue to have such rights to audit after termination of such insurance benefits.

In the event an Employer refuses to allow an audit after written demand, the Trustees may commence a lawsuit in a Court of competent jurisdiction to compel said audit. In the event a lawsuit is commenced to compel an audit, the Employer shall be liable for all costs of the audit plus attorney's fees and court costs.

4.11 OFFICERS' CERTIFICATES

The Trustees may rely on certificates from officers of the Employers or Unions to establish the facts stated in such certificates.

4.12 RULES AND REGULATIONS

The Trustees may prescribe, such rules and regulations, including rules of eligibility for benefits as may in their discretion be deemed proper or necessary for the sound and

efficient administration of this Trust, provided the rules and regulations shall not be inconsistent with the provisions of this Agreement or the collective bargaining agreement in effect when this Trust is adopted or when the rules are adopted or amended; provided, however, if the rules adopted shall in any way conflict with a subsequent collective bargaining agreement entered into by a Union and Employer subject to this Trust, the Trustees shall forthwith amend the rules to comply with the collective bargaining agreement insofar as the employee beneficiaries of that Employer are concerned. Notwithstanding the foregoing, it is understood that the intention of the Unions and Employers party to this Trust is to maintain the same provisions in their respective collective bargaining agreements for providing health and welfare benefits to their employees and that rules and regulations governing such benefits shall be those adopted by the Trustees.

## ARTICLE V

## MISCELLANEOUS

5.1 ADDITIONAL EMPLOYER PARTIES

It is anticipated that employers which are not Employers as defined in 1.2 hereof when this Agreement is first executed will later become participating employers in the Trust. Any employer which has a collective bargaining agreement with Union requiring contributions to this Trust may participate in the Trust and become an Employer party to this Agreement upon approval by the Trustees by executing this Agreement, a counterpart thereof or a Subscription Agreement in the form attached hereto and marked Exhibit A.

5.2 ADDITIONAL UNION PARTIES

It is anticipated that labor unions which are not Unions as defined in 1.3 hereof when this Agreement is first executed will later become participating unions in the Trust.

Upon consent of the Trustees, any labor union whose members are in the same or related occupations or trades as those which are originally parties hereto may become a party hereto by executing this Agreement, a counterpart thereof or a Subscription Agreement in the form attached hereto and marked Exhibit A. Once a union has become a party hereto in such manner, the employers which have collective bargaining agreements with such union requiring contributions to this Trust are eligible :to become participating employers as provided in Section 5.1 above.

5.3 WITHDRAWAL OF CERTAIN EMPLOYEES

Whenever benefits have been provided for employees of an Employer for which employees the Employer is not obligated by a collective bargaining agreement to make contributions, the Employer may withdraw such employees from coverage of this Trust by giving at least sixty (60) days' written notice to the Trustees prior to the expiration date of its then collective bargaining agreement with a Union or such other lesser period as the Trustees shall permit, it being the intention of the parties that employees shall be covered from the time of their acceptance by the Trustees as beneficiary of the Fund through the term of the then existing ant any subsequent collective bargaining agreement which provides for the continuity or the Fund, until the Employer shall give the above notice of withdrawal. The Employer will remain liable to the Fund for any obligations it may have incurred for contributions for such employees prior to but not subsequent to the withdrawal date.

5.4 ADDITIONAL POWERS AND OBLIGATIONS OF THE TRUSTEES

In, addition to the powers incorporated herein, the Trustees shall have the following powers and obligations:

1. The Trustees shall meet in Rhode Island at least once each calendar quarter year, at a date and time set by the Chairman unless a quorum shall agree in advance that there is no business to cone before the meeting. A quorum for such purpose or for transacting business at any meeting shall consist of not less than two of the Employer Trustees and two of the Union Trustees.

2. Any two Trustees may call a special meeting in Rhode Island by giving to the other Trustees at least five days' notice in writing thereof by registered mail. The notice shall state the time and place of the meeting. At any meeting at which all Trustees not present have waived notice in writing, the giving of notice may be dispensed with.

3. No Trustee except as provided by law shall be liable for the acts or defaults of any Co-Trustee, the Administrator or any agent or employee of the Trustees or for the default, refusal or failure of any insurance company to pay any benefit or payment due or claimed to he due to any beneficiary of any policy issued under the terms hereof, or for any negligent act, or for any act or omission except for his own willful misconduct. Each Trustee signatory hereto acknowledges that he must perform his duties with the care, skill, prudence and diligence that a prudent man who is acting in such capacity and familiar with such matter would use under the circumstances prevailing at the time of performance thereon.

4. The Trustees shall deposit all monies received by them in such bank or banks as they may designate for that purpose and, if they deem it advisable, invest and reinvest such funds (as in their sole and absolute judgment are not required for current expenditures) in such securities as are legal for the investment of trust funds. In the event any such securities shall cease, while held by the Trustees, to be legal investments for

trust funds under the laws of the State of Rhode Island now or hereafter in force, the Trustees may nevertheless, in their sole discretion, continue to hold and retain such securities in the Fund.

5. All funds held hereunder shall be subject to withdrawal by check, draft, voucher, or otherwise, only upon the signatures of one Trustee appointed by the Employer and one Trustee appointed by the Union.

6. To demand, collect, receive and hold Contributions and to take such steps, including the institution, prosecution or intervention in, any proceeding in law, in equity or in bankruptcy, as may be deemed by the Trustees necessary or desirable to effectuate the collection of such Contributions.

7. To compromise, settle, arbitrate and release claims or demands in favor of or against the Trust Fund or the Trustees on such terms and conditions as the Trustees deem advisable; to commence and defend suits or legal proceedings whenever the Trustees deem that any interest of the Trust Fund so requires; and to represent the Trust Fund in all suits or proceedings in any court of law or equity or before any other body or tribunal.

8. To enter into any and all contracts and agreements for carrying out the terms of this Trust Agreement and for the administration of the Trust Fund.

9. To sell, exchange, convey, transfer or otherwise dispose of any property held by them by private contract or at public auction.

10. To make, execute, acknowledge and deliver any and all documents of transfer and conveyance and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted.

11. To establish and accumulate as part of the Trust Fund a reserve or reserves adequate, in the opinion of the Trustees, to carry out the purposes of the Trust Fund and the Plan.

12. To appoint a bank or trust company, chartered under the laws of any state or of the United States, as a corporate trustee, and to enter into a trust agreement with such bank or trust company to provide for the investment and reinvestment of all or any portion of such assets, of the Trust Fund as are not needed for the purchase of a Policy or Policies (and the payment of premiums thereon) or for current expenses, with such other provisions therein as the Trustees may determine, and to transfer to such corporate trustee all or any portion of such assets of the Trust Fund. The Trustees shall be released and discharged from any liability with respect to any and all assets of the Trust Fund which they may transfer to a corporate trustee pursuant to this paragraph unless and until such assets are returned to the Trustees.

13. To pay out of the Trust Fund any taxes of any kind levied or assessed under existing or future laws upon or in respect of the Trust Fund or any money, policies or other property forming apart thereof.

14. To make rules and regulations not inconsistent with the terms hereof, and to do all acts and take any and all other actions, whether or not expressly authorized herein, and to refrain from doing any such acts and taking any such actions, all as the Trustees may deem necessary or advisable for the protection of the Trust Fund or the proper administration of the Trust Fund.

15. To lease, purchase or rent premises, supplies or equipment and to exchange or dispose of the same as they may determine will discharge their duties more efficiently.

5.5 AMENDMENTS

This Agreement nay be amended in writing at any time by the Trustees subject to securing the approval thereof in writing of the Employer and the Union designated on page one hereof. However, this Agreement may not be amended so as to change its purpose as set forth in Section 2.2 above or permit the diversion or application of any of the Trust funds for any other purpose. No amendment shall be effective until a copy thereof is delivered to each of the Trustees or the Fund Office. The Trustees shall send a copy of any such amendment, bearing the necessary signatures, to each insurer, if any.

5.6 TERMINATION OF TRUST

This Trust may be terminated at any time by the consent in writing of the Employer and the Union designated on page one hereof effective upon delivery to the Trustees.

This Trust may be terminated by the Trustees whenever there are no longer any Employers required to make contributions thereto under a collective bargaining agreement.

This Trust shall terminate in any case upon the death of the last survivor of such persons who were living at the time of its creation who were eligible for benefits under the first group insurance policy issued to the Trustees or the first benefit plan adopted by the Trustees, whichever is the earlier, unless, without the benefit of this provision, this Trust does not violate the Rule Against Perpetuities; in which case this Trust may continue in perpetuity unless otherwise terminate.

In the event of termination, the remaining funds available, after providing for all outstanding obligations shall be used in such a manner as will in the opinion of the

Trustees best effectuate the purposes of this Trust, including, bur not limited to, the purchase of insurance benefits, the provision of benefits in any other form, or their transfer to another health and welfare trust; but in no event shall any of the funds revert to or be recoverable by any Employee, Employer, or Union.

5.7 LIABILITY FOR BENEFITS

Neither the Union nor any Employer nor the Trustees, nor any officer, agent or member of them shall be liable for the benefits to be provided hereunder, and all such benefits shall be payable or collectible only to the extent and in the manner provided for in the contracts of insurance purchased or otherwise provided pursuant to this Agreement. However, nothing shall be construed herein to limit any rights any employee or union may have in law or in equity under a collective bargaining agreement against an employer for failure to make contributions to the Trust.

5.8 RIGHTS IN THE TRUST FUND

Neither any Employer nor any Trustees, nor any Employee, nor the Union nor any beneficiary of the Trust, nor of the insurance policies issued to the Trustees shall have any right, title or interest in or to the Trust Fund or any part thereof except as specifically provided in this Agreement. Neither the Trust Fund, nor any contribution to the Trust Fund nor any benefits provided through the Trust Fund shall be in any manner liable for or subject to the debts, contracts or liabilities of the Employer, the Union, any member thereof or any Employee.

No part of the Fund or any benefits payable shall be subject to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge by any person. However, the foregoing shall not be construed to forbid or invalidate any assignment by

any person of any benefits, to a doctor, hospital or other person or institution from which he or his dependent family member receives medical, hospital or other services for which such benefits are payable.

Contributions to the Trust shall not constitute, or be deemed to be, wages due the employees with respect to whose work such payments are made, and no person shall be entitled to receive any part of the contributions made or required to be made to the Trust in lieu of benefits provided by the Fund.

5.9 THIRD PARTIES DOING BUSINESS WITH TRUSTEES

No person, partnership, corporation or association doing business with the Trustees shall be obliged to see to the application of any funds or property of the Trust or to see that the terms of the Trust have been complied with, or be obliged to inquire into the necessity or expediency of any act of the Trustees; and every instrument issued or caused to be issued by the Trustees shall be conclusive in favor of any person, partnership, corporation or association relying thereon that:

a. at the time of delivery of such instruments the Trust was in full force and effect;

b. said instrument was drawn and issued in accordance with the terms and conditions of this Trust Agreement; and

c. the Trustees were duly authorized and empowered to execute such instrument.

No insurance carrier shall for any purpose be deemed a party to this Trust Agreement or be responsible for the validity or sufficiency thereof. Notwithstanding the fact that it may have knowledge of the terms of this Trust, the obligations of an insurance

carrier shall be measured and determined solely by the terms and conditions of the policy or policies issued by it, and there shall be no obligations to any person, partnership, corporation or association other than stated in such policy or policies.

5.10 SITUS OF TRUST

This Trust is accepted by the Trustees in the State of Rhode Island and all questions pertaining to its validity, construction and administration shall be determined in accordance laws of such State.

5.11 EXECUTION OF THIS AGREEMENT

This Agreement may be executed by the Trustees in counterparts and all of such counterparts so executed shall collectively constitute this one Agreement and shall be deemed to establish this one Trust.

5.12 TITLES

The titles of the various articles and paragraphs of this Agreement are inserted solely for convenience of reference and are not a part of, nor shall they be used to construe, any term or provision hereof.

5.13 APPEALS PROCEDURE

In the event that an Eligible Person (Claimant) is denied a benefit or claim in whole or in part, the following notice and appeal procedure shall be followed:

1. The person in charge of the office of the Trust shall give notice in writing by prepaid United States certified mail, return receipt requested, addressed to his or her address of record, to the Claimant within a reasonable period of time after the denial of the Claim or benefit and the specific reason or reasons for such denial written in a manner calculated to be understood by the Claimant.

2. The Claimant shall, by letter addressed to the office of the Administrator of the Fund, sent prepaid United States certified mail, return receipt requested, and received not less than sixty (60) days after notice of the denial of the claim or any benefit was mailed, claim his or her appeal from such denial. The office of the Administrator, by telephone, confirmed by letter, or by letter, will advise the Claimant of the date and time on which the Claimant may inspect the records pertaining to the claim or benefit denied which are maintained in the Administrator's office and receive an additional explanation requested of the reason or reasons for denial of the claim or benefit.

3. (a) If the Claimant is not satisfied that the denial of the claim or benefit was in accordance with the terms of the Plan adopted by the Trustees, he or she may request a hearing before the Board of Trustees by letter addressed to the Board, in care of the Administrator, which must be postmarked no later than the tenth day after the date of the c6nference with the Administrator. The letter of appeal shall state in general terms the grounds on which the appeal is being made and what is considered to be erroneous in the original decision.

(b) The Claimant will be advised within, ten (10) days of the receipt of such letter of appeal of the date, place, and tine at which the Trustees will give a hearing to the Clamant. The hearing date will be at least ten (10) but not more than thirty (30) days after the date of the Trustees' letter setting the tine, date and place of appeal. At the hearing all records concerning the claim or benefit denied will be made available to the Claimant, and he or she may present any additional information in any form through witnesses or affidavits or other documentation which he or she considers relevant to the appeal. Within ten (10) days after the conclusion of the hearing, the Board of Trustees will, by letter, advise the Claimant of their decision concerning the appeal.

4. For good cause shown, the Board of Trustees may extend or waive any time period in the appeal procedure at any step requiring an action to be taken by a Claimant to preserve his or her right of appeal.

5. In the event the Claimant is not satisfied with the decision of the Board of Trustees, he or she may make a demand for arbitration concerning the denial of the claim or benefit which was submitted to the Board of Trustees in accordance with the Labor Arbitration Rules of the American Arbitration Association within ten (10) days of the postmark date of the Board of Trustees' decision. The fee and expenses of the arbitrator and other expenses of arbitration, such as preparation or transcript and rental of a hearing room, shall be paid one half each by the Trust and the Claimant. Each party shall bear all other costs in preparation of its case, including attorney's fees, if any. The decision of the arbitrator shall be final and binding on the Trust and the Claimant. The arbitrator shall have no authority to change, alter or amend any terms of the Agreement and Declaration of Trust, the plan of benefits adopted by the Board of Trustees, the rules of eligibility adopted by the Trustee or any insurance contract or policy.

The undersigned Trustees, duly appointed or elected by the Employer and the Union designated on page one hereof, have executed this Agreement on the 7th day of September, 2005.

[signatures]