#4
-2 P10

# RESTATED AGREEMENT AND DECLARATION OF TRUST
# OF
# THE LOCAL 17 SHEET METAL APPRENTICESHIP FUND OF RHODE ISLAND

WHEREAS, an Agreement and Declaration of Trust was made and entered into as of July 1, 1994 by and between:

**SHEET METAL CONTRACTORS ASSOCIATION OF R.I.**
**(f/k/a MASTER SHEET METAL WORKERS**
**AND COMPOSITION ROOFERS ASSOCIATION**
**OF RHODE ISLAND)**
**(the "Association"),**

and

**LOCAL UNION NO. 17**
**(Rhode Island area) of the**
**Sheet Metal Workers International Association**
**(the "Union").**

WHEREAS, the Union has executed a Collective Bargaining Agreement with the Association effective as of July 1, 1994 (the "Collective Bargaining Agreement"); and with individual employers of sheet metal workers who are not members of the Association.

WHEREAS, said Collective Bargaining Agreement provides for the maintenance of a Rhode Island Sheet Metal Workers Joint Apprenticeship Training Fund;

WHEREAS, said employers (the "Employers") are obligated under the terms and conditions of the Collective Bargaining Agreement with the Union to make periodic payments to said Rhode Island Sheet Metal Workers Joint Apprenticeship Training Fund;

WHEREAS, the Union, the Association and the Employers desire to have such payments made pursuant to the Collective Bargaining Agreement plus interest earned thereon held in a trust known as the Local 17 Sheet Metal Apprenticeship Fund of Rhode Island (the "Fund") with trustees designated to receive, hold, administer, and disburse the trust property; and to define the powers, duties, and responsibilities of said trustees (the "Trustees");

WHEREAS, it is desired by the Union, the Association and the Employers that the Trustees operate an Apprenticeship Training School and formulate an Apprenticeship Program for the training and education of apprentices and journeymen, including all necessary rules and regulations in connection therewith;

WHEREAS, the Association, the Union, the Employers, and the Trustees hereby desire to amend the Declaration of Trust and to continue said Declaration of Trust as modified herein;

NOW, THEREFORE, it is hereby agreed by and between the Union, the Association, and all of the Trustees of the Fund that the terms and conditions of this Restated Agreement and Declaration of Trust of the Local 17 Sheet Metal Apprenticeship Fund of Rhode Island shall be as follows:

## ARTICLE I - DEFINITIONS

Section 1.1. Agreement and Declaration of Trust. "Agreement and Declaration of Trust" or "Agreement" means this instrument, including any amendments or modifications.

Section 1.2. Apprentice. "Apprentice" includes any person employed by an Employer who has been accepted and indentured into such Apprenticeship Program as created and adopted by the Trustees.

Section 1.3. Apprenticeship Program. "Apprenticeship Program" means the program adopted by the Trustees for the training and education of apprentices and journeymen, including rules and regulations governing the eligibility, registration, education, transfer, wages, hours, and the working conditions of such apprentices and journeymen. All of the foregoing is to be in all material respects, consistent with and reflective of the Standards of Apprenticeship for Sheet Metal Workers, as amended, and as approved by and filed with the Division of Apprenticeship Training of the Department of Labor and Industries of the State of Rhode Island. A current copy of such standards (the "Standards") is attached hereto and incorporated by reference herein as Exhibit A.

Section 1.4. Association. "Association" means SHEET METAL CONTRACTORS ASSOCIATION OF R.I. (f/k/a Master Sheet Metal Workers and Composition Roofers Association of Rhode Island).

Section 1.5. Collective Bargaining Agreement. The term "Collective Bargaining Agreement" means any Collective Bargaining Agreement presently existing between the Association, an Employer, and the Union which provides for contributions into this Fund, as well as any extensions or renewals thereof, or any new Collective Bargaining Agreement executed in the future which provides for the payment of contributions to this Fund as well as an extensions or renewals thereof.

Section 1.6. Contribution. "Contribution" means the payments required to be made to the Fund by the Employers, or by the Rhode Island Sheet Metal Industry Fund under the Terms of the Collective Bargaining Agreement, as the case may be.

Section 1.7. Employees. "Employee" includes any person employed in the bargaining unit established pursuant to the Collective Bargaining Agreements between the Union, the Association, and the Employers.

Section 1.8. Employer. "Employer" means any Association member or individual Employer who has entered into a Collective Bargaining Agreement with the Union or any Association member or individual Employer who hereafter enters into a Collective Bargaining Agreement with the Union providing for the payment of Employer contributions into the Fund and who satisfies the requirements for participation as established by the Trustees. Employer also means any other employer who has agreed in writing to contribute to this Fund.

Section 1.9. Fund. The term "Fund" or "Trust Fund" means the Trust Fund created hereunder known as the Local 17 Sheet Metal Apprenticeship Fund of Rhode Island and consisting of all contributions to the Fund received by the Trustees, together with all income, increments, earnings, and profits therefrom, and all other assets held by the Trustees for the uses, purposes, and trusts set forth in this Agreement.

Section 1.10. Investment Manager. "Investment Manager" means any person, firm, or corporation who, pursuant to Section 7.1(a) of this Agreement, has been appointed as such and has evidenced acknowledgment and acceptance of such appointment by a document signed in writing and returned to the Trustees and who is:

(1) Registered as an investment advisor under the Investment Advisors Act of 1940; or

(2) Is a bank, as defined in that Act; or

(3) Is an insurance company qualified under the laws of more than one state to have the power to manage, acquire, or dispose of the assets of trust funds such as this Fund.

Section 1.11. Joint Apprenticeship and Training Committee. Joint Apprenticeship and Training Committee or "JATC" shall mean the Committee designated by the Association and the Union. The Trustees of the Trust Fund as described in Section 1.12 herein and as designated in accordance with Article III herein may be, but are not required to be, members of the JATC.

Section 1.12. Named Fiduciaries. The Board of Trustees as described in Section 3.1 of this Agreement and the Plan Administrator shall constitute all of the named fiduciaries of this Fund and jointly shall have authority to control and manage the operation and administration of the Fund.

Section 1.13. Plan Administrator. The Plan Administrator shall be selected by the Trustees and shall be the agent of the Fund for service of any legal process.

Section 1.14. Standards. "Standards" shall mean the Standards of Apprenticeship for Sheet Metal workers as amended, and as approved by and filed with the Division of Apprenticeship Training of the Department of Labor and Industries of the State of Rhode Island. In the event of a material conflict between the provisions hereof and the provisions of the Standards, the provisions of the Standards shall prevail.

Section 1.15. Trustees. "Trustees" means the Trustees or any successor Trustees for the Fund designated in the manner provided herein. Trustees shall be "fiduciaries", as defined by the Employee Retirement Income Security Act of 1974 (ERISA).

Section 1.16. Union. "Union" means the Local Union No. 17 (Rhode Island area) of the Sheet Metal Workers' International Association and any other union of the Sheet Metal Workers' International Association that by operation of law or agreement becomes part of or merges with the Union.

## ARTICLE II - ESTABLISHMENT AND PURPOSE

Section 2.1. There is hereby established a trust fund to be officially known as the **LOCAL 17 SHEET METAL APPRENTICESHIP FUND OF RHODE ISLAND.** The Fund shall be conducted only as a non-profit fund solely and exclusively for the purpose of supporting a program for the training and education of sheet metal apprentices, journeymen, and other persons as may be designated by the Trustees, and other programs in furtherance of such training. The Fund shall be used to defray the reasonable expenses of the apprenticeship and training programs established by these Trustees as well as under the provisions of the Collective Bargaining Agreement including, but not limited to, payment of the costs of establishment, administration, and maintenance of apprenticeship and other training programs, including sufficient personnel, salaries, supplies, facilities (including the leasing or acquisition of real property and improvements thereon), tools, equipment, textbooks, and other instructional materials, and such other items directly related to the education and training of apprentices and journeymen as the JATC, established by the Collective Bargaining Agreement, may deem practicable and desirable. The Fund shall not be used for any purposes which are clearly detrimental in any material respects to: (i) the Sheet Metal Workers International Association, AFL-CIO, or any of its local union affiliates; (ii) the Union; (iii) the Association; or (iv) any Employer. Further the Fund shall be administered in a manner which is, in all material respects, consistent with and reflective of the Standards and any collective bargaining agreement to which any Employer or the Association is a party. The Fund shall not be used for or on behalf of any candidate for public office, or in the furtherance of any political campaign. The Fund shall not discriminate on the basis of race, religion, color, national origin, age, sex, or handicap.

## ARTICLE III - DESIGNATION OF TRUSTEES

Section 3.1. The Fund shall be administered by a board of six (6) Trustees, three (3) of whom shall be designated as Union Trustees and three (3) of whom shall be designated as Association Trustees. The Union may designate alternate Trustees and the Association may designate alternate Trustees. An alternate Trustee shall have the right to act only in the absence of any of the principal trustees of the party designating him or her.

Section 3.2. Selection of Trustees. The Association Trustees shall be designated by the Association. The Union Trustees shall be designated by the Union. Such selection of Trustees shall be consistent with and reflective of the Standards. All trustees designated by the Association shall be Employers or representatives of Employers. All Union Trustees shall be associated with and representatives of the Union.

The present Association Trustees are:

Eric Janssen
J. Lawrence Brillon
Richard Chabot

The present Union Trustees are:

Raymond Cagnon
John Packer
Dennis Johnson

By executing this Agreement, the Trustees consent to and accept their position as trustees herein.

Section 3.3. Additional Trustees. The number of Trustees of this Fund can be increased by mutual written agreement between the Association and the Union; provided, however, that there shall always be an equal number of Association Trustees and Union Trustees. Any additional Association Trustees shall be selected by the Association and any additional Union Trustees shall be selected by the Union.

Section 3.4. Acceptance and Tenure. In addition to the confirmation of acceptance in Section 3.2 hereof, each Trustee shall be required to accept his or her appointment as Trustee in writing, and shall serve until his death, resignation, incapacity, or removal, or as further qualified under the Standards.

Section 3.5. Resignation. A Trustee may resign and become and remain fully discharged from all further duty or responsibility hereunder by giving at least thirty (30) days prior notice in writing sent by certified mail, return receipt requested, postage prepaid, to the remaining Trustees, the Union and the Association, unless a shorter notice period shall be allowed by consent of the remaining Trustees. The notice of resignation shall state the date such resignation shall take effect. The effective date of the resignation shall be controlling, unless a successor Trustee shall have been appointed at an earlier date in accordance with provisions of Section 3.7 of this Article, in which event such resignation shall take effect immediately upon appointment of the successor Trustee. Any Trustee upon leaving office shall forthwith turn over and deliver to the Chairman or Secretary/Treasurer of the Trustees at the principal office of the Fund any and all records, books, documents, monies, or other property in his or her possession or under his or her control which belong to the Fund.

Section 3.6. Removal of Trustees. Any Association Trustee may be removed from office at any time and for any reason by an instrument in writing executed by authority of the Association. Any Union Trustee may be removed from office at any time and for any reason by an instrument in writing executed by authority of the Union.

Section 3.7. Appointment of Successor Trustee. In the event of the death, resignation, incapacity, or removal of a Trustee, a successor Trustee shall be appointed within thirty (30) days by the party entitled to designate said Trustee. Written notice of the appointment shall be served upon the other Trustees, the Union, and the Association. The Union and the Association shall respectively have the right to appoint their respective successor Trustees. Any successor Trustee shall become vested with all the rights, powers, and duties of a Trustee immediately upon his designation as a successor Trustee and his acceptance thereof in writing. Any Trustee of the party entitled to designate a successor Trustee may petition a court of competent jurisdiction for an order requiring such selection if it shall not occur voluntarily by the designated party within sixty (60) days of such vacancy.

## ARTICLE IV - OFFICERS, VOTING, MEETINGS, AND ARBITRATION

Section 4.1. Officers. At a regular meeting in the first quarter of each year, the Trustees shall select from among themselves a Chairman and a Secretary/Treasurer to serve for a period of one (1) year or until their successor is duly elected and qualified. If the Chairman is selected from among the Union Trustees, then the Secretary/Treasurer shall be selected from among the Employer Trustees. In the alternative, if the Chairman is selected from the Employer Trustees, then the Secretary/Treasurer shall be selected from among the Union Trustees. Incumbents may be reelected. All such elections shall be consistent with the Standards.

The Chairman shall preside at all meetings and see that all orders and resolutions of the Trustees are carried into effect. The Secretary/Treasurer shall keep an accurate record of the proceedings at all meetings of the Trustees and of any action taken without a meeting. Minutes of all meetings and a record of actions taken without a meeting shall be transcribed and retained by the Trustees and copies sent to all Trustees, including the alternate Trustees, if any, the Union, and the Association.

Section 4.2. Meetings. The Trustees shall have a regular meeting at least once a year, and at such other times as they may determine. Special meetings may be called by the Chairman or any two principal Trustees. At least seven (7) days written notice designating the time and place of an annual or any special meeting shall be given to all Trustees. Notice of any meeting is waived by any Trustee who attends such meeting without objection as to the lack of notice, or who executes a written waiver of such notice.

Section 4.3. Quorum. A quorum at any meeting shall consist of at least four (4) Trustees, including at least one (1) Association Trustee and one (1) Union Trustee.

Section 4.4. Voting.

(a) All decisions of the Trustees shall be by majority. The Association Trustees are entitled to a total of three (3) votes and the Union Trustees are entitled to a total of three (3) votes. Each Trustee shall have one vote; however, if one or more Trustees are not present at a meeting, the total vote allowed to each of the Association Trustees and Union Trustees present at the meeting shall be pro rated among those Association Trustees and Union Trustees, respectively, who are present at the meeting such that the Union Trustees present may collectively cost three (3) votes and such that the Association Trustees present may collectively cast three (3) votes.

(b) Voting shall be done verbally at all meetings unless any one (1) or more Trustees requests that such voting be by secret ballot.

(c) All meetings shall be conducted in accordance with Robert's Rules of Order, as amended, unless waived by all the Trustees present, or unless there is a conflict between such procedures and the terms of this Agreement. The Trustees may adopt additional or substitute rules of procedure by consent in writing at any time or from time to time.

Section 4.5. Action Without a Meeting. The Trustees may take action of any kind without a meeting, provided that such action is represented by an instrument in writing signed by all of the Trustees. Any requirements regarding notice for such actions set forth herein shall be waived if such a consent in writing is so executed.

Section 4.6. Arbitration. A deadlock shall be deemed to exist: (1) whenever a proposal, nomination, motion, or resolution made by any Trustee is not adopted by at least a majority vote (unless the same has been defeated by at least a majority vote) and the supporters of the proposal, nomination, motion, or resolution notify the remaining Trustees, in writing, that a deadlock exists; or (2) whenever a quorum is lacking at a meeting duly called, and at least three (3) Trustees from either group of Trustees notify the remaining Trustees, in writing, that a deadlock exists. In the event that the Trustees deadlock on any question of the administration of the Fund or the interpretation of this Declaration of Trust, the Trustees shall, upon written application of the Trustees appointed by the Union or the Trustees appointed by Association, submit such dispute to an impartial umpire in accordance with the American Arbitration Association's Impartial Umpire Rules for Arbitration of Impasses Between Trustees of Joint Employee Benefit Trust Funds. The decision of said umpire shall be final, binding, and conclusive upon the Trustees and all persons concerned.

The fee of the impartial umpire and the American Arbitration Association, together with such other reasonable costs and expenses as may be authorized by the Trustees, shall be proper charges against the Fund which the Trustees are authorized to pay.

If the previously described provision for resolving deadlocks is unable to be used for whatever reason, any Trustee may petition the United States District Court for the District of Rhode Island to appoint an umpire. The umpire shall immediately proceed to hear the dispute, and the decision of the umpire shall be final and binding upon the parties. Reasonable compensation for the umpire shall be paid from the Fund.

## ARTICLE V - APPRENTICESHIP PROGRAM

Section 5.1. Establishment. The Trustees, either alone or in cooperation with the JATC, shall establish and administer the Apprenticeship Program. The Trustees shall determine the provisions of the Plan and may promulgate and establish such rules and regulations as they deem necessary or appropriate for the effective administration of the Trust Fund and such programs as adopted by them. All actions by the Trustees in this regard must be consistent with maintaining the tax-exempt status required by Article XII, Section 12.3 herein.

Section 5.2. Individual Rights. No Employee or any person claiming by or through such Employee shall have any rights, title, or interest in or to the funds of any other property of the Fund, except as specifically provided by the Apprenticeship Program and the applicable rules and regulations thereunder.

## ARTICLE VI - RECORDS AND ANNUAL AUDIT

Section 6.1. The Trustees shall keep a record of all of their proceedings and acts and shall keep all such books of account, records, and other data as may be necessary for the proper administration of the Fund. The Trustees shall determine the fiscal year for the Fund. An annual audit shall be conducted and an annual financial statement prepared by a certified public accountant selected by the Trustees. The results of this audit and the books and records of the Fund, shall be made available for inspection by any party hereto, Trustee, or Employer at the principal office of the Fund.

## ARTICLE VII - POWERS AND DUTIES OF TRUSTEES

Section 7.1. In addition to those powers and duties conferred elsewhere in this Agreement or by law, the Trustees shall have the following powers and duties, all of which shall be consistent with the Standards and any applicable law, and all of which shall be exercised in good faith and for the exclusive benefit of the Fund:

(a) Investments and Fiduciary Duty. To invest and reinvest the Fund without distinction between principal and income in such securities or in such property, real or personal, as the Trustees shall deem advisable, including, but not limited to, common or preferred stocks, bonds, mortgages, and other evidences of indebtedness or ownership, subject to the requirements of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). The Trustees are empowered to delegate to an Investment Manager selected by them the management of the assets of the Fund, including the power to acquire and dispose of the assets of the Fund, pursuant to the provisions of Section 402(c) of ERISA (29 U.S.C. § 1102(c)(3)).

Each Trustee herein shall discharge his duty with respect to this Fund solely in the interest of the Apprentices who participate in the Apprenticeship Plan and for the exclusive purposes of:

1. Providing benefits to Apprentices;
2. Defraying the reasonable expenses of administering the Trust Fund; and
3. Accomplishing the aims and purposes enumerated in Article II herein

with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

The investments of the Fund shall be diversified so as to minimize the risk of large losses unless under the circumstances it is clearly prudent not to do so; and the Trustees shall act in accordance with the documents and instruments governing the Apprenticeship Program insofar as such documents and instruments are consistent with the provisions of applicable law.

(b) Purchase of Property. To purchase or subscribe for any securities or other property and to retain the same in trust.

(c) Sale, Exchange, Conveyance, and Transfer of Property. To sell, exchange, convey, transfer, or otherwise dispose of any securities or other property held by them, whether by private contract or at public auction.

(d) Exercise of Owner's rights. To vote upon any stocks, bonds, or other securities; to give general or special proxies or powers of attorney with or without power of substitution; to exercise any conversion privileges, subscription rights, or other options, and to make any payments incidental thereto; to oppose, consent to, or otherwise participate in corporate reorganizations or other changes affecting corporate securities, to delegate discretionary powers, and to pay any assessments or charges in connection therewith; and generally to exercise any of the powers of an owner with respect to stocks, bonds, securities, or other property held as part of the Trust Fund.

(e) Registration of Investments. To cause any securities or other property held as part of the Trust Fund to be registered in the Trustee's own names as such or in the name or names of one or more of their nominees, and to hold any investments in bearer form; but the books and records of the Trustees shall at all times show that all such investments are part of the Trust Fund.

(f) Borrowing. To borrow or raise money for the purposes of the Fund in such amount and upon such terms and conditions as the Trustees shall deem advisable; and, for any sum so borrowed, to issue a promissory note of the Trustees, and to secure the repayment thereof by pledging all, or any part, of the Trust Fund.

(g) Retention of Cash. To keep such portion of the Trust Fund in cash or cash balances as the Trustees from time to time may deem to be in the best interests of the Fund created hereby, without liability for interest thereon.

(h) Retention of Property Acquired. To accept and retain for such time as the Trustees may deem advisable any securities or other property received or acquired by the Trustees as Trustees hereunder, whether or not such securities or other property would normally be purchased as investments hereunder.

(i) Execution of Instruments. To make, execute, acknowledge, and delivery any and all documents of transfer and conveyance and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted, or in furtherance of the purposes hereof.

(j) Settlement of Claims and Debts. To settle, compromise, or submit to arbitration any claims, debts, or damages due or owing to or from the Trust Fund; to commence or defend suits or legal or administrative proceedings; and to represent the Trust Fund in all suits and legal and administrative proceedings. The foregoing expressly includes the power to pay all lawfully levied taxes and assessments of any kind on any real or personal property owned by the Fund.

(k) Employment of Agents and Counsel. To employ suitable agents and counsel, who may also be counsel for the Employer or the Union, and to pay their reasonable expenses and compensation. Such power includes the employment of such technical, managerial, financial, or other consultants and the like as reasonably determined by the Trustees to be necessary.

(l) Power to Do Any Necessary Act. To do all such acts, take all such proceedings, and exercise all such rights and privileges, although not specifically mentioned herein, as the Trustees may deem necessary to administer the Trust Fund and to carry out the purposes of this Fund.

(m) Bonding. To provide bonds for the Named Fiduciaries and any employees of the Fund who are responsible for the handling of funds. The amount of such bond shall be at least ten percent (10%) of the funds handled by such persons in the preceding fiscal year of the Trust Fund. In no event shall such bond or bonds be less than $1,000.00 or more than $500,000.00 or such higher amount as may be prescribed by the Secretary of Labor of the United States. The cost of obtaining such bond shall be paid from the Trust Fund as an expense of administration.

(n) Delegation. The Trustees are authorized and empowered to delegate to any Trustee or employee, or to any other person, association, or entity, authority to act on their behalf and to discharge duties or functions assigned to them under the provisions of or consistent with this

Declaration of Trust. The action of such duly authorized agents or representatives shall be binding and shall have the same effect as if performed by the Trustees themselves. Notwithstanding the foregoing, such ability to delegate shall not include to the responsibility to manage the assets of the Fund, other than the ability to appoint an Investment Manager or Managers.

(o) Industry Contributions. To make contributions or to pay dues or membership fees to organizations of like kind and status in the sheet metal industry.

Nothing herein enumerated shall be deemed to prevent the Trustees from exercising some or all of the above powers within such limits of discretion as would be applied by a reasonable and prudent fiduciary under similar circumstances.

Section 7.2. Compensation and Expenses. To the extent required by ERISA or other applicable law, the Trustees shall serve without compensation. If allowed by ERISA and other applicable law, a Trustee who would not otherwise receive compensation from an employer for hours spent in furtherance of the purposes of this Fund may be compensated for such loss of time by the Fund, or, in lieu of such compensation, if such Trustee's employer agrees to compensate such Trustee for hours spent on business of the Trust, the Trust may reimburse such employer's payments. No such compensation for loss of time shall exceed the amount of Thirty and 00/100 Dollars ($30.00) for each hour of time so lost. Trustees may be reimbursed for all reasonable and necessary expenses incurred in conducting activity on behalf of the Fund, including educational expenses. No reimbursement for expenses need be made to any Trustee unless advance approval for incurring such expense has been made by the Trustees.

Section 7.3. General Reporting Requirements. The Trustees shall prepare and furnish any and all reports or other documentation required by ERISA or the regulations published thereunder. In addition, the Trustees shall file with the Secretary of the Treasury of the United States and the Secretary of Labor of the United States, any and all reports, documentation, and information required by ERISA and the regulations promulgated thereunder. To the extent provided by law, the Apprentices are entitled to copies of said reports, and the Fund may make a reasonable charge to cover the cost of furnishing such information; however, such costs cannot exceed that set forth in regulations prescribed by the Secretary of Labor of the United States.

Section 7.4 Fund Depository and Signing of Checks.

(a) Any and all monies received by the Trustees hereunder shall be deposited in the name of this Trust Fund in such bank or banks as the Trustees may agree upon. Any and all withdrawals of monies from such account or accounts shall be by check bearing the signature of one (1) Association Trustee and one (1) Union Trustee, except as provided in Section 7.4(c). Notwithstanding anything set forth herein to the contrary, no such withdrawal shall be made and no such check shall be written in excess of the amount of Three Thousand and oo/100 Dollars ($3,000.00) unless authorized by the signatures of two (2) Association Trustees and two (2) Union Trustees.

(b) The Association Trustees shall designate in writing the name or names of the Employer Trustee(s) who are authorized to sign checks in the manner above stated for the furtherance of the purposes of the Trust Fund. The Union Trustees shall designate the name or names of the Union Trustee(s) who are authorized to sign checks in the manner above stated. The Board of Trustees shall furnish notice to the bank or banks in which any account or accounts are maintained in the name of

this Trust Fund, giving the names and specimen signatures of the Trustees who are authorized to sign checks which are drawn on such account or accounts.

(c) The Trustees may authorize an employee to sign checks drawn on an account or accounts deposited in a bank or banks in the name of this Trust Fund. In all such instances, the bonding provisions of Section 7.1(m) and notice provisions of Section 7.4(b) shall apply to an employee so designated, and in addition, any check drawn by such employee must be signed by one (1) of the Trustees designated in accordance with the provisions of Section 7.4(b) of this Article.

Section 7.5. Use and Preservation of Trust Assets. The Trustees shall collect the Contributions and the income earned on Trust Fund investments for the purpose of providing benefits for those Employees on whose behalf contributions have been made to this Trust Fund. The Trust Fund assets are not to be used to provide training or other benefits for individuals who are not subject to collective bargaining agreements providing for contributions to this Trust Fund. The Trustees are empowered to develop and implement programs to protect and preserve Trust Fund assets and to prevent unnecessary expenditures. To the extent that the Trustees have trained an individual who is employed in the sheet metal industry, but which employment does not result in contributions being made to this Trust Fund, the Trustees shall attempt to recover from such individuals the cost of providing the training or the materials furnished by this Fund. The Trustees are authorized to develop such reasonable rules and regulations as may be necessary to implement this provision.

## ARTICLE VIII - FUNDING POLICY CONTRIBUTIONS AND COLLECTIONS

Section 8.1. Funding Policy and Contributions. The funding policy of this Fund as required by Part 3 of Title I of ERISA (29 U.S.C. §§ 1081-10186) shall be as follows:

(a) Each Employer, or the Rhode Island Sheet Metal Industry Fund, as the case may be, shall contribute to the Fund the amounts required by the Collective Bargaining Agreement between the Employer and the Union or as required by a participant agreement signed by the Employer and the Fund. Such contributions shall be made on or before the twentieth (20th) day of each month, in arrears. Any delinquency in the payment of a contribution may be assessed a late payment fee as set forth in the Collective Bargaining Agreement.

(b) The Trustees shall have full authority to determine all questions of the nature, amount, and duration of training programs and other benefits to be provided based upon the contributions received and to be received, the reserves established in the Fund, and the other assets of the Fund in such manner as to prevent undue depletion of the Fund or excessive accumulation of assets in the Fund, all of the foregoing to be in accordance with the requirements of the United States Department of Labor, and any other applicable federal, state, or local regulatory or supervisory agency or body.

(c) The Trustees shall establish such rules and regulations as they deem necessary for the collection of Contributions and shall be under the duty to collect such contributions from Employers. The Trustees may commence in their name any action or suit they deem appropriate to collect any delinquent Contributions or contributions otherwise due and owing from any Employer.

Section 8.2. Transmission of Contribution Reports and Contributions. The Trustees shall establish a uniform system among the Employers for the timely transmission of Contribution reports and for the timely payment of contributions. The Trustees shall, consistent with their rules and regulations,

notify any Employer of a delinquency, mistake, or discrepancy in such Employer's Contribution report or Contribution payment. The Trustees shall have the right to inspect such wage, payroll, and other records of contributing Employers as they deem to be necessary from time to time to assure the Trustees that proper contributions are being made.

Section 8.3. Liability for Contributions and Debts. Neither the Union nor the Association nor any individual member of either of the foregoing shall be liable for any debts, liabilities, or obligations of the Fund or of any of the Trustees. No Employer shall be liable for the contributions required to be made by any other Employer, nor shall the Association, nor any individual member of the Association.

## ARTICLE IX - LIABILITY INSURANCE AND OTHER LIABILITIES

Section 9.1. Liability Insurance. The Trust may purchase insurance for its Named Fiduciaries or for the Fund itself to cover liability or losses occurring by reason of the acts or omissions of any fiduciary, but only if such insurance permits recourse by the insurer against the Named Fiduciary in the case of a breach of fiduciary obligation by such Named Fiduciary. Nothing in this Section 9.1 shall prohibit a Named Fiduciary, the Union, or the Association from purchasing additional or alternative insurance to cover potential liability of one or more persons who serve in a fiduciary capacity.

Section 9.2. Liability of Third Persons. No person dealing in good faith with the Trustees in relation to this Trust Fund shall be obliged to see to the application of any money or property of the Trust Fund, to see that the terms of this Trust Fund have been complied with, or be obliged to inquire into the necessity or expediency of any act of the Trustees; and every instrument executed by the Trustees shall be conclusive in favor of every person relying thereon:

(a) That at the time of the delivery of said instrument, the Trust Fund herein created was in full force and effect;

(b) That said Trust Fund instrument was executed in accordance with the terms and conditions contained in this Declaration of Trust; and

(c) That the Trustees were duly authorized and empowered to execute such instrument.

Section 9.3. Personal Liability of Trustees. No Trustee shall be liable or responsible for his own actions or non-action, or for any acts or defaults of any other fiduciary or party in interest or any other person except to the extent liability is imposed by ERISA or by other applicable law. The Trustees, to the extent permitted by ERISA, shall incur no liability in acting in good faith upon any instrument, application, notice, request, signed letter, telegram, or other paper or document believed by them to be genuine, to contain a true statement of facts, and to be signed by the proper person. The Trustees may from time to time consult with the Trust Fund's legal counsel, accountant, Investment Manager, investment consultant, and any other professionals; and to the extent permitted by ERISA, the Trustees shall not be held liable for their reasonable and good-faith reliance upon the advice of such professionals. To the extent permitted by ERISA, no Trustee shall in any way be liable or responsible for anything done or committed in the administration of the Trust Fund prior to the date he or she became a Trustee or subsequent to his or her service as a Trustee. To the extent permitted by ERISA, no Trustee shall be personally liable for any liabilities or debts of the Trust

Fund, nor for the inability of the Trust Fund to fulfill any contract or obligation. All liabilities and obligations of the Trust Fund shall be paid by the Fund.

Section 9.4. Liability of the Association, Employer, and the Union. To the extent permitted by ERISA and by applicable laws, the Association, any Employer, or the Union shall not in any way be liable in any respect for any of the acts, omissions, or obligations of the Trustees, whether individually or collectively.

## ARTICLE X - AMENDMENTS

Section 10.1. This Agreement and Declaration of Trust may be amended in writing at any time by the unanimous consent of the Association, the Union, and the Trustees; provided, however, that no amendment shall be adopted which:

(a) Conflicts with any applicable law or government regulation;

(b) Causes the use or diversion of any part of the Fund for purposes other than for the exclusive benefit of the participant and beneficiaries; and

(c) Changes the amount of Contributions required to be made by the Employers, the amount of said Contributions being governed solely by the applicable Collective Bargaining Agreement executed between the Union and the Association.

## ARTICLE XI - OPERATION AND TERMINATION OF THE FUND

Section 11.1. This Trust Fund is organized exclusively for educational and scientific purposes, including, for such purposes, the making of distributions to organizations that qualify as exempt organizations under Section 501(c)3 of the Internal Revenue Code, as may be amended from time to time.

Section 11.2. No part of the net earnings of the Trust Fund shall inure to the benefit of, or shall be distributable to Employers, Trustees, or other private persons, except to make payments and distributions in furtherance of the purposes set forth in Section 2.1 hereof, and as otherwise authorized herein. No substantial part of the activities of the Trust Fund shall be the carrying on of propaganda, or otherwise attempting to influence legislation. Notwithstanding any other provision of this document, the Trust Fund shall not carry on any other activities not permitted to be carried on: (a) by an organization exempt from federal income tax under Section 501(c)3 of the Internal Revenue Code, as may be amended from time to time; or (b) by an organization, contributions to which are deductible under Section 170(c)(2) of the Internal Revenue Code, or any corresponding section of any future federal tax code.

Section 11.3. This Declaration of Trust shall continue in effect for the period provided for in the current and any subsequent Collective Bargaining Agreement, and for the period of any renewal or extension thereof. In the event of a termination of the Collective Bargaining Agreement or the apprenticeship and training provisions thereof, the Trustees shall pay all of the indebtedness of the Trust Fund and shall use all of the remaining monies in the Trust Fund, if any, for the continuance of apprenticeship and other training programs then operating and of the type herein contemplated under

the guidance of the Joint Apprenticeship and Training Committee until such remaining monies have been exhausted.

Section 11.4. Upon the dissolution of the Trust Fund, the assets of the Fund, if any remain after the application of Section 11.3, shall be distributed for one or more exempt purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code, as may be amended from time to time, or shall be distributed to the federal government, or to a state or local government, for a public purpose. Any such assets not disposed of shall be disposed of by a court of competent jurisdiction in the county in which the principal office of the Trust Fund is then located, exclusively for such purposes or to such organization or organizations as said Court shall determine which are organized and operated exclusively for such purposes.

## ARTICLE XII - GENERAL PROVISIONS

Section 12.1. Governing Law. This Declaration of Trust and the Fund established as related thereto shall be construed under and in accordance with the laws of the State of Rhode Island.

Section 12.2. Information to be Furnished by Employers. Each Employer shall furnish the Trustees with such information as the Trustees may require in connection with the administration of the Fund.

Section 12.3. Qualification. This Declaration of Trust is entered into on the express condition that all payments made by the Employers to the Fund are legally deductible as business expenses for income tax purposes under state and federal law, and that the Fund will be qualified pursuant to the Internal Revenue Code of 1954, as amended, as a tax-exempt organization. The Trustees shall take such action as may be necessary to obtain and maintain the tax-exempt status for the Fund. The Trustees shall make such amendments as may be necessary to obtain and to retain such tax-exempt status. In connection with qualifying the Fund for income tax purposes, the Trustees are expressly authorized to execute a power of attorney to such persons and in such form as they deem necessary.

Section 12.4. Severability. In the event that any provision of this Declaration of Trust shall be held illegal or invalid for any reason, said illegality or invalidity shall not affect the remaining provisions of this Declaration of Trust; and the provisions held illegal or invalid shall be fully severable and the Declaration of Trust shall be construed and enforced as if said illegal or invalid provisions had never been inserted herein.

Section 12.5. Counterparts. This Declaration of Trust may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

WHEREFORE, all of the Trustees of the Fund have caused this Declaration of Trust to be executed in their name and on their behalf on this 23rd day of January, 1995.

The Association and the Union hereby agree to the terms and conditions of this Declaration of Trust and the appointment of the Trustees contained therein and have executed the same in their name and on their behalf by their officers and representatives duly authorized as of the day and date written above.

WITNESS:

Name: RAYMOND GAGNON

Name: ASBJORN GULDHAUGE

Name:

SHEET METAL CONTRACTORS ASSOCIATION OF R.I. (f/k/a MASTER SHEET METAL WORKERS AND COMPOSITION ROOFERS ASSOCIATION OF RHODE ISLAND)

By:
Name: RICHARD WILD
Title: PRES. MASTERS ASS.

By:
Name:
Title: Vice Pres. Master Assoc

By:
Name:
Title:

WITNESS:

Name:

Name:

Name:

LOCAL UNION NO. 17 (RHODE ISLAND AREA) OF THE SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION

By:
Name: JOSEPH NIGRO
Title: BUSINESS MANAGER

By:
Name: ROBERT D. SPINAUSY
Title: FINANCIAL SECRETARY-TREASURER

By:
Name:
Title:

We, the undersigned Trustees, to hereby accept our respective appointments as such, do hereby agree to discharge our duties as such in good faith and for the exclusive benefit of the Fund, and hereby agree to the terms and conditions of this Declaration of Trust.

WITNESS:

Name: GERALD L. SCHIANO

Name: GERALD L. SCHIANO

Name: GERALD L. SCHIANO

ASSOCIATION TRUSTEES:

Eric Janssen

J. Lawrence Brillon

Richard Chabot

WITNESS:

Name: GERALD L. SCHIANO

Name: GERALD L. SCHIANO

Name: GERALD L SCHIANO

UNION TRUSTEES:

Raymond Cagnon

John Packer

Dennis Johnson

We the undersigned Trustees, to hereby accept our respective appointment as such, do hereby agree to discharge our duties as such in good faith and for the exclusive benefit of the fund, and hereby agree to the terms and conditions of this Declaration of Trust.

**WITNESS:**

NAME: Manuel Correia

NAME: Manuel Correia

NAME: Manuel Correia

**ASSOCIATION TRUSTEES:**

NAME: Richard Chabot

NAME: Eric Janssen

NAME: Raymond Martin

**WITNESS:**

NAME: Manuel Correia

NAME: Manuel Correia

NAME: Manuel Correia

**UNION TRUSTEES:**

NAME: Gerald Peloso

NAME: Harold Chaffee

NAME: Ralph Nonnenmacher